UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **PIPPIN TOWING AND RECOVERY, LLC,** | ) |
| **Plaintiff,** | ) ) ) |
| vs. | ) Case No. 4:19CV2143 HEA ) |
| **MR PIPPIN'S TRUCK SERVICE, LLC,** | ) ) |
| **Defendant.** | ) ) |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss for Lack of Jurisdiction Pursuant to Fed.R.Civ. P. 12(b)(1), [Doc. No. 10].  Plaintiff opposes the Motion. For the reasons set forth below, the Motion will be denied.

### Facts and Background

Plaintiff's First Amended Complaint alleges the following:

Plaintiff is the successor in interest of a sole proprietorship that began doing business using the PIPPIN name in the Festus, Missouri area in 1954. In 2012, Rachel Fisher acquired the sole proprietorship, and in 2014 converted the sole proprietorship into a Missouri limited liability company.

In 2009, with the permission and authorization of Plaintiff's predecessor in interest, Rachel Fisher started a truck service company in the Festus, Missouri area that did business under the name "Pippin Truck Service." In 2011, Rachel Fisher

Case: 4:19-cv-02143-HEA   Doc. #:  20   Filed: 04/27/20   Page: 2 of 9 PageID #: 136

transformed the Pippin Truck Service sole proprietorship into the limited liability company, "Pippin Truck Service, L.L.C."

Plaintiff and Pippin Truck Service, L.L.C. are affiliates, managed and operated by Rachel Fisher and have prominently used, and currently prominently use, the PIPPIN name in the eastern Missouri and southwestern Illinois area in connection with the following services: repair, installation and maintenance services for trucks and trailers, emergency roadside assistance services for trucks and trailers, namely, responding to calls for roadside assistance, flat tire changing, emergency fuel supplying, battery jump starting, emergency roadside engine diagnostics, winch-out services, unlock services; truck and trailer breakdown assistance, truck and trailer breakdown towing services.

Since 1954 Plaintiff, on its own and through its predecessor in interest, has consistently, continuously and extensively used the name PIPPIN prominently as a trade name and service mark in connection with the rendition of towing and recovery services. Since at least 2009, Plaintiff has authorized and licensed use of the PIPPIN name for use in connection with trucking repair, which are highly related to Plaintiff's towing and recovery services. In connection with these services, the PIPPIN mark has been extensively used in advertising, promotion, on service vehicles and on its facilities.

Plaintiff and its affiliate currently operate facilities in Missouri that provide trucking repair and towing services to commercial trucking businesses throughout eastern Missouri and Illinois. These facilities are located in Jefferson and Saint Genevieve Counties, Missouri. In conducting business, Plaintiff and its affiliate provide in-shop repairs, roadside assistance, towing, lock-out, fueling services for trucks and trailers, general vehicle inspection services, Department of Transportation inspections and vehicle breakdown services. Plaintiff and its affiliate also sell parts and fluids for commercial trucks.

Plaintiff and its affiliate use the PIPPIN mark and trade names on shop signage, stationery, advertising, vehicles, promotional materials, public relations materials, collateral materials, its website, third party referral sites and a multitude of communications materials.  Plaintiff owns United States Service Mark Application No. 888519990 for the word mark PIPPIN for use in connection with repair, installation and maintenance services for trucks and trailers, emergency roadside assistance services for trucks and trailers, namely, responding to calls for roadside assistance, flat tire changing, emergency fuel supplying, battery jump starting, emergency roadside engine diagnostics, winch-out services, unlock services, truck and trailer breakdown assistance, and truck and trailer breakdown towing services.

For some 65 years Plaintiff and its predecessor in interest have actively publicized its business and the PIPPIN mark has become distinctive as the source of Plaintiff's towing services. Similarly, by virtue of the authorized use of the mark by Pippin Truck Services, L.L.C and its predecessor in interest, which use inures to the benefit of Plaintiff, the PIPPIN mark has become distinctive as the source of truck repair services.

Because of Plaintiff's substantial marketing communication efforts over a long period of time, the public associates Plaintiff's PIPPIN mark and trade name with Plaintiff's business and the public associates substantial goodwill with Plaintiff's PIPPIN mark and trade name.

Due to the long-standing and prominent usage of the PIPPIN mark and trade name, the name PIPPIN has become distinctive and is recognized by the public as an indicator of Plaintiff's towing, recovery, and truck repair services.

On September 13, 2018, Defendant, under the control and acts of Cletus Pippin, Jr., organized itself and began operation of a truck repair business using the name MR. PIPPIN'S TRUCK SERVICE, LLC, a name patently confusingly similar to that of Plaintiff's and Plaintiff's PIPPIN mark. In doing so, Defendant and Cletus Pippin, Jr. had the specific intent of trading on Plaintiff's PIPPIN mark, causing confusion. Defendant continues to use the designation PIPPIN in advertising and in written and oral communications with customers, prospective

customers, and the public in a manner designed and intended to cause confusion with Plaintiff's PIPPIN mark.

Plaintiff began using and promoting and continued to consistently use and promote its PIPPIN mark many years before Defendant began any use of the word PIPPIN in any form. Defendant willfully and intentionally used designations containing PIPPIN that are confusingly similar to Plaintiff's service marks and trade name in an attempt to capitalize on the goodwill associated with Plaintiff's marks and to mislead customers into believing there is an association between Defendant and Plaintiff or their respective services. Defendant's use of designations containing PIPPIN that are confusingly similar to Plaintiff's service marks and tradenames is likely to cause confusion, mistake, or deception as to the source of origin of Defendant's services because Plaintiff and Defendant's services are identical or substantially so, as are the manner in which the services are marketed and delivered, the channels of trade and the characteristics of both parties' consumer and trade customers. Instances of actual confusion have already occurred in which customers and third parties have mistaken Defendant for Plaintiff and Defendant's services for those of Plaintiff.

Defendant's wrongful activities substantially affect interstate commerce because they damage Plaintiff's interstate goodwill and reputation, deprive

Plaintiff of control over Plaintiff's interstate reputation, and damage Plaintiff's marks.

Count I of Plaintiff's Complaint states a claim for false designation of origin in violation of the Lanham Act, 15 U.S.C. §1125(a). Count I of Plaintiff's Complaint alleges a claim under § 1125(a) of the Lanham Act. Count II of the Complaint is a claim for common law unfair competition and service mark infringement.

Defendant moves to dismiss for lack subject matter jurisdiction.  Defendant urges that the Court lacks subject matter jurisdiction over the Lanham Act Count (Count I) and would therefore lack supplemental jurisdiction over Plaintiff's state law claim for unfair competition and service mark infringement as well.

## Discussion

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss an action based on lack of subject matter jurisdiction. The Eighth Circuit has held that "[i]n deciding a motion under Rule 12(b)(1), the district court must distinguish between a facial attack—where it looks only to the face of the pleadings—and a factual attack—where it may consider matters outside the pleadings." *Croyle v. United States*, 908 F.3d 377, 380 (8th Cir. 2018). Under a facial challenge, the reviewing court examines the complaint to determine if the plaintiff has satisfactorily alleged grounds for subject matter jurisdiction. The

6

nonmoving party is afforded the same protections he would receive were he defending against a Rule 12(b)(6) motion. A factual challenge, on the other hand, tests the factual basis the nonmoving party has asserted for subject matter jurisdiction. Matters outside of the pleadings may be considered by the reviewing court and the nonmoving party is afforded no Rule 12(b)(6)-type protections.

To survive a motion to dismiss for lack of subject matter jurisdiction, the party asserting jurisdiction has the burden of establishing that subject matter jurisdiction exists. *V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000).

Section 1125(a) of the Lanham Act provides for a cause of action against a defendant that uses a mark "in commerce" that is likely to cause confusion with the plaintiff's mark. *See* 15 U.S.C. § 1114(a) (providing a cause of action against any person who, without the consent of the registrant, uses in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark); 15 U.S.C. § 1125(a)(1)(a) (providing a cause of action against any person who uses in commerce any word, term, name, symbol, or device likely to cause confusion, to cause mistake, or to deceive). As used in the Lanham Act, the word "commerce" means to "all commerce which may be lawfully regulated by Congress." 15 U.S.C. § 1127.

Here, both parties have submitted and rely upon materials outside the pleadings. Specifically, Defendant cites to the content of Plaintiff's Website. Plaintiff has submitted the declaration of its principal, which incorporates exhibits which provide a nonexclusive list of customers outside of the State of Missouri and Federal Motor Carrier Safety Administration SAFER database showing that each of these customers is identified by the federal government as an "interstate" carrier operation. Further shown on Plaintiff's Exhibit A1 is that the federal government lists 12 of the customers as having physical addresses outside of Missouri. Plaintiff's Exhibit A2 are the invoices documenting the work of Plaintiff or its affiliate's work with these entities.  Exhibit A3 provides documentation that Plaintiff has provided services for customers in Illinois and has travelled to Illinois to drop off vehicles.  Exhibit A4 is the collection of services and drop offs for customers in states other than Missouri and Illinois.

The Court determines that the interstate commerce requirement—which 15 U.S.C. § 1125(a) incorporates—is met here. The Lanham Act defines interstate commerce as "all commerce which may lawfully be regulated by Congress." 15 U.S.C. § 1127.  Based on the evidence presented to support the motion and the opposition thereto, Defendant's argument based solely on Plaintiff's website (which simply sets out Plaintiff's physical location in Missouri) is significantly outweighed by Plaintiff's evidence that Plaintiff is indeed engaged in interstate

commerce and that Plaintiff's business activities affect interstate commerce. The Court, therefore, is satisfied that it may exercise subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 based on Plaintiff's Lanham Act claim.

In light of the finding that the Court possesses federal question jurisdiction, it also has supplemental jurisdiction over Plaintiff's state claim for unfair competition and service mark infringement.

## Conclusion

Based upon the foregoing analysis, Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction is without merit. Although Defendant requested jurisdictional discovery, based upon the foregoing, the Court denies the request.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss for Lack of Jurisdiction Pursuant to Fed.R.Civ. P. 12(b)(1), [Doc. No. 10], is **denied**.

**IT IS FURTHER ORDERED** that in light of the Court's Order of April 17, 2020 granting Defendant 60 days within which to retain new counsel, Defendant is granted 21 days from the expiration of the said 60-day period to file further responsive pleadings to Plaintiff's Complaint.

Dated this 27th day of April, 2020.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE